Mr. Pugh was convicted after a jury trial of felon in possession of a firearm, conspiracy to possess cocaine base with intent to distribute, and carrying a firearm in furtherance of a drug trafficking offense. Mr. Pugh raised several challenges to his conviction. He had raised a guideline challenge but I acknowledged, as the government pointed out in its responsive brief, that this court has since rejected that argument. Today I will focus on the 404b challenge, the rehafe instruction, and the spoliation instruction if time. First, the district court aired an evidence that Mr. Pugh committed a robbery armed with a knife. This was admitted as a certified copy of conviction under Government Exhibit 54. The fact that Mr. Pugh previously possessed a knife during a robbery is irrelevant to the crime charge and the prejudicial impact outweighed any probative value to the offenses he faced at trial. Does it matter he also had a gun in his pocket while he had the knife out, right? So we aren't challenging that officer testimony that there was a firearm found in his pocket. Our issue is with the certified copy of conviction which discussed the possession of the knife in an armed robbery. What exactly did it say again, the certified copy? The certified copy of conviction stated that, just in the general kind of complaint, stated that while armed with a knife and intending to demand property from the occupants of the residence by threatening the imminent use of force. That was the certified copy. But mentioned the knife but not the gun, you're saying? Correct. Then the officer testified that he also was carrying a gun. Yes, that's correct. So what do you think should have happened? The judge should have let the conviction in and excluded mention of the knife and allowed only mention of the gun? I think the court could have allowed the testimony that he had possessed a firearm as it happened at trial. I don't think it was necessary for this conviction to come in at all. If it was to come in, at least at the very minimum, it should have been redacted to take out that completely irrelevant and prejudicial language. What was the objection that was made precisely? The objection at trial was to everything. And the trial attorney objected to the entrance of the conviction as well as the testimony. But on appeal, we aren't challenging the testimony itself. But it was an all or nothing objection? There wasn't a suggestion of redaction? There wasn't going in and making these kind of... No, not the nuanced arguments that are made on appeal, no. But there was an objection to all of the evidence. What you're quoting from, is that really the charge or the conviction? I'm working at Government Exhibit 54. Right. That looks like a charge to me. Go ahead. Yes. What I'm quoting from is the charge and it also included the guilty plea where he stated he was pleading guilty to the charge and the information and the indictment. But boy, the guilty plea and waiver doesn't really add anything, right? It just says attempted armed robbery. That's correct, Your Honor. Proceed. But the fact that it was a robbery is also prejudicial in our opinion. The possession of a knife is irrelevant to any of the crimes charged under the King case that's cited in our brief. There, there was contemporaneous possession of a knife and a firearm. The D.C. Circuit indicated that the possession of the knife was irrelevant to whether the to the firearm. Because it had no relevance, it was more prejudicial than probative. All it did was make Mr. Pugh look like a violent criminal, which was especially harmful in this case and why it's not, the error was not harmless. Are you familiar with our Halk case? H-A-L-K or Halk? Not off the top of my head, Your Honor. And I don't know what was in the briefs. It is especially harmful in this case because his defense was that he was merely present. Um, and the fact that this makes him, is just propensity evidence and makes him look like a violent criminal makes it much more difficult for the jury to believe that evidence. The evidence itself was weak, as discussed in the brief. All the evidence of criminal activity was in the front seat and Mr. Pugh was in the back seat. Cell phones were recovered that were indicative of drug trafficking. None of those involved Mr. Pugh. And the 404B instruction only dealt with prior convictions dealing with firearms and drug offenses. It didn't discuss this robbery or the knife possession. Turning next to the failure to instruct on the rehafe instruction requires a reverse and remand for a new trial under plain error review. The government here concedes that the first two prongs of plain error review are met and that there was an error and it was plain. How about Hollingshead? What do you do with the Hollingshead case? So Hollingshead I do not think defeats our claim. Hollingshead the court looked at the, and Hollingshead the court looked to the PSR and indicated that the defendant had served several years in prison. But when you look at Hollingshead in conjunction with the Davies case that just came out last Friday, the fact that Mr. Pugh had served several years in prison isn't conclusive evidence that he should have known he was a felon. What about the stipulation? The stipulation says convicted. I think the Davies case says the magic word is, the magic in there is that the magic word conviction never appeared in Davies. I think you can take Davies to say, but we also need to analyze what a defendant would have known. And I think what distinguishes these circumstances here is that Mr. Pugh was a juvenile when he was charged and convicted. And although technically in the old chief stipulation, he acknowledged that counts as a felony. I think it's arguable that he could have argued to a jury. Well, he was a juvenile at the time he was charged and convicted. So therefore, he didn't have the required knowledge that it was a felony for purposes of this statute. And I think Davies stands for that. So we can look at the surrounding circumstances. Even though in that case, he was convicted technically under Iowa law, he might not have known that. And so I think that's how that applies here as well. No court, looking recently to the rehape decisions post that have been pending on appeal, no court has held that the old chief stipulation itself  or knowledge that the individual is a felony. You say none of these? Now, I don't know what they are, but there are several unpublished cases in other circuits. You say none of them rely on a stipulation? So they don't rely on it exclusively, at least from what I've found. Oh, OK. Thank you. You added the word exclusively there, and that helps me. Yes. Some courts have said you can infer some knowledge, but I haven't found one that's relied on that exclusively to get over that knowledge hump. The other evidence admitted at trial, the 404B evidence, Government Exhibit 54, also does not establish knowledge of a firearm. Felony is only mentioned in the trial, the trial information, the charging document of it. Nothing established that Mr. P received that. Nothing established what occurred at the proceedings in Rock Island. So it doesn't take judicial notice of the rules of criminal procedure? I don't think you can. But a person wouldn't be told at a plea or a sentencing? Your Honor, I think that would be improper, because Why? Based off my experience in state court, sometimes defendants are told things that are completely wrong. If there's evidence of that in this case, that he was told something or what he was told It's your burden on a plain air case to show that he wasn't told what he should have been told under the rules, wouldn't it be? So it's our burden to show that the evidence was, the standard the courts have applied when they're looking at the evidence is whether the evidence presented was overwhelming or beyond a reasonable doubt to establish this omitted evidence. I think we've met this burden to show that the evidence was not overwhelming or proof beyond a reasonable doubt. And I don't know if I could Wait, why would that be the standard if it's a plain air case? That sounds like a harmless air standard. So courts in cases where it's plain air for failure to instruct on the element of the offense have required overwhelming evidence or even use language proof beyond a reasonable doubt when it comes to these third and fourth prongs of plain air. Hollingshead does not though, right? Hollingshead does the standard talk. I don't think Hollingshead really explicitly states one way or another the standard they are applying. Well, the bottom line is that he cannot show a reasonable probability outcome would have been different, but for the error. Right, and my position is that when you're analyzing that prong under this kind of claim, that requires a showing that either the evidence was proof beyond a reasonable doubt or overwhelming language used by both the Supreme Court and other circuit courts of appeals. Should we consider, since we're in a hypothetical world of what would have happened if the defendant had objected what the government could have offered in addition to what was actually offered in figuring out whether the third and fourth prongs are satisfied? Because what you're seeking is a judgment of acquittal basically, right? And double jeopardy would apply and so forth. Davies rejected that argument that the government is barred from retrial. So our position based off of the decision last Friday is that it should go back for a new trial. So we had made that argument, but this court has since rejected that it's barred by double jeopardy and acquittal is appropriate. I see. I think it's problematic to kind of think hypothetically at the stage of appeal because who knows what we could have put in? Who knows what the government could have put in? Which is why it's appropriate to reverse and remand for a new trial. I'll reserve the remaining time for rebuttal. All right, Mr. Hammond, we'll hear from you. Thank you, Your Honors. May it please the court and counsel, I represent Darren Warren, his appeal from his conviction.  Allowing the jury to hear evidence of his prior conviction for possession of crack cocaine and for possession of a firearm. He was convicted in the same trial as Mr. Pugh and was convicted of the same offenses. That is a conspiracy to distribute cocaine, possession of a firearm, in furtherance of a drug offense, and being a felon in possession of a firearm. He argues that it was an abuse of discretion to introduce evidence of his prior convictions because he did not put into question his mental state, whether he knowingly possessed a firearm or intended to possess it, because he did not admit that he was in possession of the firearms and he was not caught there. So if I may discuss the facts. He made a complete denial? He made a complete denial, right? Complete denial, Your Honor. Boy, then it's really relevant, huh? Highly relevant, Your Honor. So, Your Honor, you go ahead. All right, very well. So the facts are that the government had an individual named Mr. Robbins who was doing a controlled buy from a third party. This third party made a statement to the effect, there goes Smurf. Smurf being a known nickname of my client, Mr. Warren. I objected at trial. That statement was admitted not for the truth of the matter asserted, but rather to explain the course of conduct for the witness, Mr. Robbins. Mr. Robbins then told the police he recognized the driver of a white Jeep as being Mr. Warren. At trial, when confronted with the video evidence of the gas station where these events occurred, Mr. Robbins recanted and admitted that he did not have the ability to see who the driver of the white Jeep was, given the timing of the events. Shortly after the Jeep left this parking lot, it began to pursue Mr. Roberts. The police then stopped the vehicle. They did so by Officer Butts pulling up alongside of this Jeep and another vehicle stopping the Jeep's progress by going nose to nose with it. That police vehicle had an in-car camera. That camera captured approximately 20 seconds of video showing the three individuals in the white Jeep attempting to flee. One was unable to flee. That was Mr. Pugh. He was apprehended at the scene. The passenger fled but was apprehended. The driver fled but was not apprehended. Detective Butts chased the driver of the vehicle but was unable to identify who he was. He then went back later and reviewed the video that I referred to and testified that he identified the driver as the defendant. Inside the Jeep was a cell phone which contained text messages from someone identifying themselves as Smurf, my client's nickname, and communicating with someone known to be my client's girlfriend. And that is the totality of the evidence that my client was driving the vehicle. At trial, through counsel, he denied being present during the offense because he did not assert the mere presence defense. He objected to the use of any prior Bad Axe evidence to try to show that he knowingly possessed the cocaine or the firearm. He did so in writing prior to trial. He did so also at the time of trial so his objections were timely made. This court has had occasions to visit the use of prior convictions to prove intent and knowledge on many occasions. I would suggest that in none of those cases where that evidence was allowed was there a factual similarity with Mr. Warren's case. In many of the cases cited in both briefs, there are cases where the evidence has been allowed. But I would point out in the leading case, Jenkins, the defendant testified at trial and his prior conviction or his prior Bad Axe testimony was allowed at rebuttal. In the Thomas case, another leading case, interpreting Jenkins, defendant was arrested in his own apartment where crack cocaine was found. Are you familiar with the Foster case, this court, 2003? Yes, your honor. Okay, that's a general denial case, as I understand. I wasn't there at all. And in that one, it was admitted, right? I understood the facts to be that Mr. Foster was arrested in close proximity to a bag of cocaine. A bag of cocaine was found in close proximity to his vehicle. It was my understanding that Mr. Foster was also present at that time. And so he essentially said, I was there, but that's not mine, the mere presence defense. I thought he said he wasn't at the crime scene. Well, I may be wrong too in this summary here. Very well. Well, I'm happy to revisit that, your honor. But I believe in none of these cases, sorry, the Hill case, which is also a leading case, cited the defendant was arrested in a parking lot of an apartment where he did not deny that he had been staying and where controlled substances were found. So in this case, the court admitted the evidence saying there was some evidence of the defendant's identity. And this proffered evidence, his priors, would assist the jury in making the determination of whether his possession of the cocaine and the firearm were knowingly done. I would submit that is not the standard for the admissions for this type of evidence. Otherwise, the evidence would lose most of its meaning. Anyone who goes to trial under this theory would find themselves in a circumstance where their prior convictions could be introduced against them. Certainly, that is not the intent of the rule. In every criminal case, there's some evidence that the defendant committed it. And the rule certainly doesn't mean that whenever the defendant is identified as a perpetrator of an offense, his prior convictions would be admissible. Is the standard here relevance? I used the word before, and you went along with me on that, that that is the first prong. It's just plain old relevance, right? The prior convictions? Yeah. Yes, Your Honor. And there may only be introduced... Your office is a pretty low standard, huh? It is. But under the rule, the proffered evidence must first fit into the categories provided. That is to say motive, intent... Yes. Identity, lack of mistake, or accident. If the proffered evidence doesn't tend to prove those items, then it's not allowed under the rule. It would then be 404B1 evidence, which is propensity evidence. So there is argument from the United States that it's a rule of inclusion, and that is correct. However, as the case law points out, there first must be a proper purpose for the evidence. And the elements of admissibility under the rule have to first be satisfied before it could be introduced. Afterwards, if those elements of admissibility are satisfied, the court can consider whether it is more prejudicial than probative. Here, the court simply said, well, it will assist the jury because there's already some evidence of his identity. And that is really the fundamental problem here. When the jury heard this evidence, they, in effect, heard identity evidence. Identity evidence can be admissible, a prior bad act, which tends to show that the defendant committed the instant offense because he committed a prior offense in a similar way. A cat burglar who scales the outside of a building commits an offense in a distinctive way. If the defendant is charged with committing an act similarly, then his prior is some evidence of his identity. But here... Did the judge say he was letting it in for identity? No, Your Honor. I argue that that is the effect of this. It is telling the jury this individual is more likely to... The effect, not the intent of the court. The effect is to say to the jury, this is the same individual. He has a prior conviction for possession of crack cocaine, and that's what he's charged with today. You're saying that just the effect is propensity evidence, isn't that right? Propensity evidence. If the effect were identity, then it would be admissible under 404B if it were the right kind of identity evidence. You're right. I would argue that it's not the right kind of identity evidence. But didn't the judge let it in for knowledge and intent? Judge let it in for knowledge of intent based on the fact there was some evidence of identity. I think the court's statement was, because there was some evidence of his identity from which the jury could find that he was the operator of the Jeep, then these prior convictions would assist them in deciding whether or not... If they decided he was in the car... That's right. ...then the issue of knowledge and intent would be in play. That's right, Your Honor. And our argument is basically that the rule announced in Jenkins survives old chief. It survives the cases afterwards because this case is factually distinct. The defendant was not caught in the commission of the offense, did not present a mere defense, a mere presence defense. Thank you. All right. Thank you for your argument. Mr. Ripley, we'll hear from you when you're ready. Thank you, Your Honor. Good morning. May it please the court, counsel. I want to start this morning by responding to Ms. Quick and the issue of the 404B. She indicates she's not challenging Officer Gable's testimony about the gun, but it sure does seem like she's ignoring it. Um, it was the substance of the government's 404B evidence against Mr. Pugh. The testimony from Officer Gable about his response to the house in Rock Island when he encountered Mr. Pugh and watched a pistol fall from his person as he kind of tripped as he was fleeing from officers. Can you describe what part of his person? I really don't know. Can you describe where on his person the gun was? It fell from his mid-body somewhere. Proceed. Um, the Exhibit 54 was part of the government's presentation, of course, in 404B. And it does contain the word knife. That's undisputed. But I would like to note that there was some redaction with Exhibit 54 and then some of the similar exhibits for Mr. Warren and the third defendant, Mr. Vesey. Following those redactions, the court inquired of each counsel, including Mr. Pugh's trial counsel, if they had a specific objection to that exhibit, to 54. And the response from Pugh's trial counsel was no, no objection. Um, it is part of, it is a small part of the charging document. It is not, the word knife does not appear, of course, in the guilty plea nor anywhere else. What do you mean, what do you mean about this no objection? Are you saying that there was an objection and then? There was an objection, there was an objection by Mr. Pugh's counsel to the overall use of 404B evidence on the part of the government. When it came time to admit that specific part of that proof, which is Exhibit 54, the court wished that there be some redactions. And so we took some time, and it might have been the next day in trial, that ultimately that was essentially readmitted in the form that you have it, and that form was not objected to. Well, but wasn't it subject to the previous objection? Yes. I am not suggesting that the objection overall to 404B was not maintained. That is not my point here. My point is that if it didn't impact Pugh's trial counsel to the point, if it, and by it I mean the mention of the knife. If it did not impact Pugh's trial counsel to the point that he objected to its inclusion in 54, then it is certainly safe to assume that there was no impact on the jury. And that is ultimately. I don't know if that follows, but I thought you were making a preservation argument. No. That he could have asked for redaction. No, but what the jury heard from Officer Gabel was the presence of a pistol, and that was the live testimony. That was the bulk of the 404B evidence against Mr. Pugh. Counsel, most of our states have a document called conviction. Some of our states it's required, but no conviction. You know, it says at the top, judgment and conviction. At least in Missouri it says those three words. In many of our other states it says conviction, and such a document was not before the court. We have the charge and the plea, right? You are correct. Okay, I don't know anything about Illinois. Proceed. That is all that's in 54 there. Well, 54 is just. Oh, yeah, I see. And so, well, Ms. Quick, on behalf of Mr. Pugh, spends a great deal of time discussing the knife, the knife, the knife. But really, it was a very minor part, a small part of the government's 404B evidence against Mr. Pugh. Are you familiar with the Halk case, H-A-L-K? That prior offense apparently didn't require, didn't even involve a firearm, but he was convicted of carrying a firearm. You're not familiar with it, are you? I'm not, no. I apologize, Your Honor. Discourt 2011. But here, of course, squarely at issue in Mr. Pugh's defense was his knowing possession of the firearm at issue, and this evidence went right to the heart of that. Officer Gabel's testimony was clear. The exhibit indicates that he pled guilty to armed robbery associated with that event. That is, of course, why we admitted that exhibit, is to show his acceptance of his guilt on that event. The guilty plea does not, excuse me, does not reference a knife either. It is just, again, a small part of the initial charging document. And the facts, quite frankly, are that he had both on that day in Illinois as part of that incident. He had both a knife and a gun. So the inclusion of that word does not render the admission of this evidence improper, and it was certainly not an abusive discretion on the part of the district court to do so. If this court disagrees, of course, given the totality here, the entry of that was harmless. The proof was significant, as I addressed in the sufficiency portion of my brief. The suggestion is that Mr. Robbins was essentially the sum total of the proof against Mr. Pugh. That is certainly not the case. He was corroborated, in fact, by Mr. Pugh himself. There was the jail call that Mr. Pugh made indicating that Dre called the law on us. In other words, on him and Mr. Warren and Mr. Vesey. So we know that Mr. Pugh saw Mr. Robbins that day, and it stands to reason that the reverse would be true, that Mr. Robbins saw Pugh. There was clear video proof of Pugh's location in the Jeep, clear video proof of the activities that that Jeep was undertaking prior to its encounter with Mr. Robbins, which is to say, crack cocaine sales from both sides of the vehicle, which were captured on the gas station surveillance video. You say clear, you mean clear enough for a jury to find it. It's not crystal clear, you'd acknowledge, right? Well, tinted windows and, you know, what's going on. Sure, the tinted windows issue, which of course is the object, I guess, of the spoliation argument. But the record is replete with photographs of that Jeep. And Mr. Robbins was examined thoroughly, both on that issue of what actually he saw. I'm just exploring what you meant by the word clear. Go ahead. Yes. Well, what I was referring to is the surveillance video, Your Honor, from the gas station, which shows multiple people coming up to the front, both passenger and driver windows of that vehicle in the moments leading up to the minutes, I should say, leading up to the encounter with Mr. Robbins. And there was expert testimony that given everything that was found inside that Jeep, the crack cocaine, the scale, the pistol, the currency, the sandwich bags, that those encounters with those pedestrians were crack cocaine sales. And Mr. Pugh was present in the vehicle for all of that, and was in fact, ultimately, the jury found that he was protecting those transactions. He was the muscle in the backseat, quite honestly. Shifting to Mr. Warren, but staying with 404B, Mr. Hammond suggests that there's a danger that whenever, I guess, the defendant is charged with a crime, that we could have 404B evidence. And that's just not the case. We have 404B evidence when one of the categories for which it's allowed is at issue. And in this case, for both Mr. Pugh and Mr. Warren, the categories at issue were the knowledge and intent. With respect to Mr. Warren, it was his knowing possession of both the pistol recovered in the Jeep, but also in his case, the knowing possession of the crack cocaine or the cocaine base that was found in the vehicle. He denied being there. He denied everything. And as such, he put those at issue. As the district court noted, the jury could find that Darren Warren was the driver of that Jeep. And quite obviously, the jury did find that. Now, the Foster case is in your briefs. I think it's in your briefs. It is. Okay. How similar are the facts of Foster to this case? You know, as is often the case, they're not on point. They're not close enough. They just aren't. But... Because that's a general denial, I was there case. It is a general denial. It is closer to, and to be honest with you, it has a few more aspects of mere presence. But to get to the mere presence, even though it was not asserted, I'm not suggesting that Mr. Hammond asserted it on behalf of Mr. Warren because he did not. But there was considerable evidence that Darren Warren was driving that Jeep. That evidence included Mr. Robbins' testimony. I disagree that the trial record indicates that Mr. Robbins recanted. He... Mr. Robbins, the record is clear, was thoroughly examined. And the jury, of course, took a look at his credibility and must have found him credible. Detective Butt identified Darren Warren as the driver of that vehicle. And I would point out too, Darren Warren's phone, his cell phone, identified him as the driver of that vehicle. This incident was in August of 2017. And around that time, this court, other circuits, the Supreme Court have all had cases indicating how... what cell phones mean in our society right now. Everyone has one. They don't leave home without it. Neither did Darren Warren on that day.  It's incredibly strong evidence that he was, in fact, the driver, as Detective Butt said and as Robbins said. And so once the jury finds that he's there, then the jury is charged with deciding whether he knowingly possessed the crack cocaine and whether he knowingly possessed the pistol. And because those are elements that the government has the burden on, and those are decisions that the jury has to make, this evidence was relevant. It was close in time. It was close in kind. It certainly wasn't more prejudicial. And it was proved to the standard that it must be. And so there was no abuse of discretion in admitting it against Mr. Warren, similarly to Mr. Pugh. I'll address, because Ms. Quick did, the Rahafe issue. I think the Hollingshed case answers that. I would point out one thing that was not, I guess, before the court, or was not discussed by the court or Ms. Quick. The Hollingshed court looked to Hollingshed's PSR and noted that he had spent 78 months incarcerated for that prior felony when thinking about whether Mr. Hollingshed knew that he was a felon. Ms. Quick indicated that Mr. Pugh was a juvenile, and maybe then he didn't quite understand or didn't know the impact of this conviction. But Mr. Pugh certainly knew where he was from March 12th of 2010 to November 9th of 2012, and that was in an incarceration facility as a result of that conviction. Similarly with Mr. Warren, and that is in his PSR, Mr. Pugh's PSR, it's paragraph 63. With respect to Mr. Warren, paragraph 61 of his indicates that he was sentenced to a term of three years. So again, after Hollingshed, it's appropriate to look to what a person actually served as a result of the conviction when asking whether they knew. And in this case, it's clear that they did. Also, both, as the court's aware, both Mr. Pugh and Mr. Warren stipulated, and the stipulations included the word conviction, included that they were convicted for a felony. The word convicted, right, to be honest? Now, is it conviction? Correct, yes. The magic word is convicted here. Yes. In these particular stipulations in this case, yes. And so, that claim on Rehafe fails as well. Unless there are other questions from the court, I think I will yield the remainder of my time. Thank you. Very well. Thank you for your argument. Ms. Quick, we'll hear from you in brief rebuttal. Why don't we put the clock at one minute, please? I want to start where I left off. With this Rehafe and the standard of review, where I'm getting this overwhelming and proof beyond a reasonable doubt, even under plain error review. In Johnson v. United States, it's 520 U.S. 461. There, the Supreme Court said that there was no plain error for failure to instruct on the evidence element of the offense because it was overwhelming. In Johnson, a Third Circuit case, 899 F3D 191, there they said for plain error for failure to instruct on an element of the offense is requires that there be proof beyond a reasonable doubt of that element that was not instructed to the jury. So, while there is plain error and we have the burden, the court should also take into account that this was a major error. This was the fact that Mr. Pugh did not have notice of an element of the offense. The jury was not instructed. He didn't have the opportunity to look to see if there was any defenses and present any evidence to the jury. And so, for those reasons, we assert there is plain error and it should be reversed under rehafe. What about the fact that Pugh didn't raise this point in his opening brief? In his opening brief? Yeah, on appeal. Should it be considered waived because he didn't raise it until later after rehafe was decided? He could have raised it earlier. Other people were raising it. No, Your Honor, I don't believe so. Under plain error review, if the law changes while a case is pending on appeal, that is plain error. I don't recall the case citation. I've cited it in other cases. I'm not talking about plain error law. I understand that plain error law incorporates intervening law, but a person still has to raise it properly. I don't recall and I can provide the citation. I know there's a Ninth Circuit case I've cited in other cases. In that case, it was, in fact, even a motion to dismiss. And it was an immigration case. And the defendant had failed to raise a motion to dismiss, challenging the underlying removal, and then also hadn't raised it in their opening brief on direct appeal. There was an intervening U.S. Supreme Court case. They filed for supplemental briefing. And there was a question of whether it was waived, especially because it was a motion to dismiss. And those are Rule 12, and they generally have to be filed. There, the Ninth Circuit indicated that it wasn't waived because it would have been pointless to raise it before this until there was a change in the law. I don't remember the case off the top of my head, but I can provide that to the court. Well, I wonder if it would have been pointless for this man to raise it. In hindsight, it wasn't. Right, it wasn't pointless. And if Rehave hadn't prevailed, he could have petitioned for cert. At the time that this Rehave came down, every single circuit in the country had rejected the argument that you needed knowledge of your status. So I think because of that reason, and that's a context that plays in criminal law, when every circuit has rejected it, that to be faulted for failing to raise it initially is not a bar to relief. But I can provide the citation to that one case. Okay, thank you for your argument. The cases are submitted. Thank you to all counsel, and particularly Mr. Hammond. I neglected to mention that the court appreciates your service under the Criminal Justice Act. Thank you to all counsel for your arguments. The cases are submitted, and the court will file an opinion in due course. Counsel are excused.